# EXHIBIT K

**Supplemental Declaration Of Covenants, Conditions & Restrictions & Grant & Reservation Of Easements For Royal Highlands Street & Landscape Maintenance Corporation**
**(Recorded On November 7, 2002)**

APN: 177-31-616-001 THROUGH 021; 177-31-711-001 THROUGH 163
177-31-813-001 THROUGH 033; 177-31-712-001 THROUGH 104
177-31-810-010; 177-31-610-014; 177-31-710-005

20021107
.01762



WHEN RECORDED, MAIL TO:
Jane Stern
250 Pilot Road, Suite 140
Las Vegas, Nevada 89119

# SUPPLEMENTAL DECLARATION OF

# COVENANTS, CONDITIONS AND RESTRICTIONS AND

# GRANT AND RESERVATION OF EASEMENTS FOR

# ROYAL HIGHLANDS STREET AND

# LANDSCAPE MAINTENANCE CORPORATION

BONY000291


# TABLE OF CONTENTS
# FOR
# DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND GRANT AND RESERVATION OF EASEMENTS FOR ROYAL HIGHLANDS STREET AND LANDSCAPE MAINTENANCE CORPORATION

Page

## ARTICLE 1
## Definitions

| | | Page |
|---|---|---|
| 1.1 | Annexable Territory | 3 |
| 1.2 | Articles | 3 |
| 1.3 | Assessment, Annual | 3 |
| 1.4 | Assessment, Special | 3 |
| 1.5 | Base Assessments | 3 |
| 1.6 | Beneficiary | 3 |
| 1.7 | Board | 3 |
| 1.8 | Budget | 3 |
| 1.9 | Bylaws | 3 |
| 1.10 | Carriage Light Fixtures | 3 |
| 1.11 | Close of Escrow | 4 |
| 1.12 | Common Elements | 4 |
| 1.13 | Common Expenses | 4 |
| 1.14 | Common Lot | 4 |
| 1.15 | Corporation | 4 |
| 1.16 | Corporation Governing Documents | 4 |
| 1.17 | Corporation Maintenance Funds | 4 |
| 1.18 | Declarant | 5 |
| 1.19 | Deed of Trust | 5 |
| 1.20 | Director, Directors | 5 |
| 1.21 | Family | 5 |
| 1.22 | FHA | 5 |
| 1.23 | FHLMC | 5 |
| 1.24 | Fire Access Easement | 5 |
| 1.25 | Fiscal Year | 5 |
| 1.26 | FNMA | 5 |
| 1.27 | Future Development Phase | 5 |
| 1.28 | GNMA | 5 |
| 1.29 | Guest | 5 |
| 1.30 | Improvements | 5 |
| 1.31 | Improvement Restrictions | 6 |
| 1.32 | Lot | 6 |
| 1.33 | Manager | 6 |
| 1.34 | Map | 6 |
| 1.35 | Master Association | 6 |
| 1.36 | Master Association Documents | 6 |

BONY000292



| | | |
|---|---|---:|
| 1.37 | Master Declarant | 7 |
| 1.38 | Member, Membership | 7 |
| 1.39 | Mortgage | 7 |
| 1.40 | Mortgagee, Mortgagor | 7 |
| 1.41 | Notice and Hearing | 7 |
| 1.42 | Officer, Officers | 7 |
| 1.43 | Owner | 7 |
| 1.44 | Person | 7 |
| 1.45 | Phase 1 | 7 |
| 1.46 | Phase of Development | 7 |
| 1.47 | Private Drainage Easements | 7 |
| 1.48 | Private Irrigation and Power Easement | 8 |
| 1.49 | Private Streets | 8 |
| 1.50 | Property | 8 |
| 1.51 | Public Utility Easements | 8 |
| 1.52 | Record, File, Recordation | 8 |
| 1.53 | Residence | 8 |
| 1.54 | Resident | 8 |
| 1.55 | Rules and Regulations | 8 |
| 1.56 | Sight Visibility Restriction Easement | 9 |
| 1.57 | Street Light and Traffic Control Devices Easement | 9 |
| 1.58 | Supplemental Declaration | 9 |
| 1.59 | VA | 9 |
| 1.60 | Walls | 9 |

## ARTICLE 2
### The Corporation

| | | |
|---|---|---:|
| 2.1 | Organization of Corporation | 10 |
| 2.2 | Duties and Powers | 10 |
| 2.3 | Membership | 11 |
| 2.4 | Transfer | 11 |
| 2.5 | Transfer of Common Elements | 12 |
| 2.6 | Board of Directors | 12 |
| 2.7 | Voting Rights | 12 |
| | 2.7.1 Declarant's Control; Termination of Declarant's Control | 13 |
| | 2.7.2 Proxies | 14 |
| | 2.7.3 Actions | 14 |
| 2.8 | Repair and Maintenance by the Corporation | 14 |
| | 2.8.1 Maintenance Standards | 14 |
| | 2.8.2 Common Elements | 14 |
| | 2.8.3 Charges to Owners | 14 |
| 2.9 | Repair and Maintenance by Owners | 15 |
| 2.10 | Use of Agent | 16 |

## ARTICLE 3
### Owners' Property Rights

| | | |
|---|---|---:|
| 3.1 | Legal Description of Lot | 16 |



| | | |
|---|---|---|
| 3.2 | Corporation Easements | 17 |
| 3.3 | Partition | 17 |
| 3.4 | Members' Easements in Common Elements | 17 |
| 3.5 | Waiver of Use | 17 |
| 3.6 | Damage by Member | 17 |
| 3.7 | Private Streets and Sidewalks | 17 |
| 3.8 | Private Drainage Easement | 18 |
| 3.9 | Sight Visibility Restriction Easements | 18 |
| 3.10 | Street Light and Traffic Control Device Easements | 18 |
| 3.11 | Alarm System and Monitoring | 18 |
| 3.12 | Common Lot Walls, Easement Walls, Perimeter Walls and Wrought Iron Walls | 18 |
| 3.13 | Boundary Walls | 19 |
| 3.14 | Party Walls | 19 |
| 3.15 | Private Irrigation and Power Easement | 19 |
| 3.16 | Public Utility Easements | 19 |

### ARTICLE 4
### Architectural Review Committee

Architectural Review Committee ..... 19

### ARTICLE 5
### Corporation Maintenance Funds and Assessments

| | | |
|---|---|---|
| 5.1 | Personal Obligation of Assessments | 20 |
| 5.2 | Maintenance Funds of Corporation | 20 |
| 5.3 | Purpose of Assessment | 20 |
| 5.4 | Fiscal Year and Determination of Budget | 21 |
| 5.5 | Budget Ratification | 21 |
| 5.6 | Base Assessments | 21 |
| 5.7 | Annual Assessments | 21 |
| 5.8 | First Annual Assessment | 22 |
| 5.9 | Maximum Annual Increase | 22 |
| 5.10 | Special Assessments | 22 |
| 5.11 | Time for Payments | 22 |
| 5.12 | Delinquency | 23 |
| 5.13 | Creation and Release of Lien | 23 |
| 5.14 | Enforcement of Liens | 24 |
| 5.15 | Capital Contribution to the Corporation | 24 |

### ARTICLE 6
### Property Easements and Rights of Entry

| | | |
|---|---|---|
| 6.1 | Easements | 24 |
| 6.2 | Rights of Entry | 25 |

BONY000294

## ARTICLE 7
### Declarant's Rights and Reservations

Declarant's Rights and Reservations ........................................................ 25

## ARTICLE 8
### Residence and Use Restrictions

Residence and Use Restrictions ............................................................. 27

## ARTICLE 9
### Insurance

| | | |
|---|---|---|
| 9.1 | Duty to Obtain Insurance; Types | 27 |
| 9.2 | Waiver of Claim Against Corporation | 28 |
| 9.3 | Right and Duty of Owners to Insure | 28 |
| 9.4 | Notice of Expiration Requirements | 28 |
| 9.5 | Insurance Premiums | 28 |
| 9.6 | Trustee for Policies | 28 |
| 9.7 | Actions as Trustee | 29 |
| 9.8 | Annual Insurance Review | 29 |
| 9.9 | Required Waiver | 29 |

## ARTICLE 10
### Destruction of Improvements

| | | |
|---|---|---|
| 10.1 | Restoration of the Property | 30 |
| 10.2 | Partition | 30 |
| 10.3 | Residence Damage | 30 |
| 10.4 | Notice to Owners and Listed Mortgagees | 31 |

## ARTICLE 11
### Eminent Domain

| | | |
|---|---|---|
| 11.1 | Condemnation of Common Elements | 31 |
| 11.2 | Notice to Owners and Mortgagees | 31 |

## ARTICLE 12
### Rights of Mortgagees

Rights of Mortgagees ........................................................................ 31

## ARTICLE 13
### Duration and Amendment

| | | |
|---|---|---|
| 13.1 | Duration | 34 |
| 13.2 | Termination and Amendment | 34 |
| 13.3 | Protection of Declarant | 36 |

BONY000295



## ARTICLE 14
### Annexable Territory

| | | |
|---|---|---|
| 14.1 | Additions by Declarant | 37 |
| 14.2 | Other Additions | 37 |
| 14.3 | Rights and Obligations of Annexable Territory | 37 |
| 14.4 | Notice of Addition | 38 |
| 14.5 | Deannexation and Amendment | 38 |

## ARTICLE 15
### General Provisions

| | | |
|---|---|---|
| 15.1 | Enforcement of Restrictions | 39 |
| 15.2 | Severability | 39 |
| 15.3 | Interpretation | 39 |
| 15.4 | Mergers or Consolidations | 39 |
| 15.5 | No Public Right or Dedication | 39 |
| 15.6 | No Representations or Warranties | 40 |
| 15.7 | Nonliability and Indemnification | 40 |
| 15.8 | Notices | 42 |
| 15.9 | Priorities and Inconsistencies | 42 |
| 15.10 | Constructive Notice and Acceptance | 42 |

**ATTACHMENTS**

| | |
|---|---|
| EXHIBIT "A" | Property Legal Description |
| EXHIBIT "A-1" | Property Legal Description (Common Lots Units 2, 3 & 5) |
| EXHIBIT "A-2" | Future Development Phase Legal Description |
| EXHIBIT "B" | Private Drainage Easement, Public Utility Easement, Fire Access Easement |
| EXHIBIT "C" | Recorded Maps (copy) |
| EXHIBIT "C-1" | Phase 1- Site Maps – for reference only |
| EXHIBIT "D" | Legal Description and reference map for Annexable Territory |
| RATIFICATION | Royal Highlands Street and Landscape Maintenance Corporation |



20021107
.01762

# SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND GRANT AND RESERVATION OF EASEMENTS
## FOR
## ROYAL HIGHLANDS STREET AND LANDSCAPE MAINTENANCE CORPORATION

THIS SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND GRANT AND RESERVATION OF EASEMENTS FOR ROYAL HIGHLANDS STREET AND LANDSCAPE MAINTENANCE CORPORATION is made as of this 31st day of October, 2002, by SOUTHWEST 31 LLC, a Nevada Limited Liability Company ("Declarant").

### PREAMBLE:

WHEREAS, Declarant is the Owner of the real property all of which is located in Clark County, Nevada, as is more fully described in Exhibit "A" attached hereto and incorporated herein by this reference; and

WHEREAS, the Master Declaration of Covenants, Conditions and Restrictions and Reservations of Easement for Southern Highlands ("Master Declaration"), recorded on January 6, 2000, in Book 20000106, as Instrument No. 01678, Official Records, Clark County, Nevada and First Amendment to Master Declaration of Covenants, Conditions and Restrictions ("Master First Amendment") recorded on January 6, 2000, in Book 20000106, as Instrument No. 01679, Official Records, Clark County, Nevada provides that Neighborhood Associations may be created and Supplemental Declarations may be established for the purposes of managing and administering the Common Elements within said Neighborhood Association; and

WHEREAS, it is the desire and intention of Declarant to create and to impose mutually beneficial restrictions under a general plan of improvement for the benefit of all the Lots in the common-interest community. A minimum of two homebuilding companies will be involved developing the Property; and

WHEREAS, the marketing name shall be American West Royal Highlands Glen Eagles and American West Royal Highlands Inverness, and the nonprofit corporation organized in connection therewith is the Royal Highlands Street and Landscape Maintenance Corporation; and

WHEREAS, as a benefit to the Royal Highlands community, all homes in Glen Eagles and Inverness shall be a part of a community alarm monitoring system; and

WHEREAS, Phase 1 consists of three hundred twenty one (321) Lots and the Common Lots described in this Supplemental Declaration and pursuant to Article 14 of this Supplemental Declaration the Declarant reserves the right, but is not obligated to and does not warrant, to annex into the development an additional one thousand (1000) Lots to the Property exclusive of the Lots in Phase 1; and

WHEREAS, the Common Elements, the expense of which is to be equally shared by the Owners, include but are not limited thereto, Common Lots A through Z inclusive, Common Lots

BONY000297

AA through FF inclusive, as shown upon the recorded Map of Royal Highlands at Southern Highlands – Unit 1 and Common Lots A through D inclusive, as shown upon the recorded Map of Royal Highlands at Southern Highlands – Unit 4 as may be amended from time to time consisting of but not limited to Private Streets, sidewalks, roundabouts, center medians and islands with ambiance lighting, street signs, landscaping, vehicle and pedestrian entry/exit gates and appurtenances, entry gate building, landscaping, entry monuments and signage, fountain, Private Drainage Easements, alarm system monitoring for Residences (if Declarant wires the Residences for a basic, limited alarm system); and

WHEREAS, in addition to this Supplemental Declaration, the Property, is subject to all terms, conditions, reservations, restrictions, grants and any other provisions of record or contained in the Master Declaration and Master First Amendment.

NOW, THEREFORE, Declarant hereby records this Supplemental Declaration for the limited purpose of identifying and establishing each Owner's maintenance responsibilities and Assessment obligations for the Common Elements and providing for the maintenance and repair of said Common Elements within the Royal Highlands Street and Landscape Maintenance Corporation. This Supplemental Declaration is not an amendment to the Master Association Documents previously recorded against the Property. All provisions of this Supplemental Declaration are hereby imposed as equitable servitudes upon the Property.

DECLARANT FURTHER DECLARES that all of the Property is to be held, conveyed, hypothecated, encumbered, leased, rented, used, occupied and improved subject to the limitations, restrictions, reservations, rights, easements, conditions and covenants, as well as the obligations, rights and duties set forth in this Supplemental Declaration, all of which are declared and agreed to be in furtherance of a plan for the protection, maintenance, improvement and sale of the Property for the purpose of enhancing the value, desirability and attractiveness of the Property. Each of the provisions of this Supplemental Declaration shall run with and burden the Property and shall be binding on and for the benefit of all of the Property and all Persons having or acquiring any right, title or interest in the Property, or any part thereof, and their successive Owners and assigns. The development plan of the Property shall be consistent with the overall development plan, if any, submitted to the VA and/or FHA provided the Property has received project approval from VA and/or FHA.

DECLARANT FURTHER DECLARES that Declarant, its successors, assigns and grantees, covenant and agree that the interest in the Common Elements, the Membership in the Corporation and the Master Association, any easements conveyed therewith and the fee title to each respective Lot conveyed therewith shall not be separated or separately conveyed, and each such interest, Membership and easement shall be deemed to be conveyed or encumbered with its respective Lot even though the description in the instrument of conveyance or encumbrance may refer only to the Lot. Any conveyance by an Owner of a Lot, or any portion thereof, shall be presumed to convey the entire Lot, together with a Membership in the Corporation and Master Associaiton.

ARTICLE 1
Definitions

Unless otherwise expressly provided, the following words and phrases when used herein shall have the following specified meanings.

2

BONY000298

1.1     Annexable Territory. "Annexable Territory" shall mean the real property which may, from time to time, be made subject to this Supplemental Declaration and the Master Association Documents pursuant to Article 14 hereof; provided that the maximum number of Lots that may be added to the Property pursuant to Article 14 shall not exceed one thousand (1000) Lots, exclusive of the Lots in Phase 1. Attached hereto as Exhibit "D", for reference purposes only, is a site plan of the real property subject to annexation.

1.2     Articles. "Articles" shall mean the Articles of Incorporation of the Royal Highlands Street and Landscape Maintenance Corporation, as such Articles may be amended from time to time.

1.3     Assessment, Annual. "Annual Assessment" shall mean a charge against a particular Owner and his Lot, representing a portion of the Common Expenses for the Neighborhood Association which are to be levied among all Owners and their Lots in the Property, in the manner provided herein.

1.4     Assessment, Special. "Special Assessment" shall mean a charge: (a) against a particular Owner, levied by the Board after Notice and Hearing, which is directly attributable to, or reimbursable by, that Owner, equal to the cost incurred by the Corporation for damages to the Common Elements; (b) which the Board may from time to time levy against a particular Owner and his Lot, representing a portion of the cost to the Corporation for reconstruction, maintenance or repair of any Improvements on any of the Common Elements. The Assessment levied pursuant to 1.4(b) shall be levied among all the Owners and their Lots in the Property in the same proportions as Annual Assessments.

1.5     Base Assessment. "Base Assessment" shall mean the Base Assessments payable to the Master Association and as defined in the Master Association Documents. The Base Assessment is in addition to any other assessments or fees that may be collected under this Supplemental Declaration.

1.6     Beneficiary. "Beneficiary" shall mean a Mortgagee under a Mortgage or a Beneficiary under a Deed of Trust, as the case may be, and the assignees of such Mortgagee or Beneficiary.

1.7     Board. "Board" shall mean the Board of Directors of the Corporation, elected in accordance with the Bylaws of the Corporation and this Supplemental Declaration.

1.8     Budget. "Budget" shall mean a written, itemized estimate of the income and Common Expenses of the Corporation in performing its functions under this Supplemental Declaration.

1.9     Bylaws. "Bylaws" shall mean the Bylaws of the Corporation, as such Bylaws may be amended from time to time.

1.10    Carriage Light Fixtures. "Carriage Light Fixtures" shall mean the exterior lighting installed on the Residence by Declarant, located on the garage or entry columns and operated by a photoelectric cell.

3

BONY000299

1.11 Close of Escrow. "Close of Escrow" shall mean the date on which a deed or other such instrument conveying title to a Lot in the Property is Recorded.

1.12 Common Elements. "Common Elements" shall mean the Common Lots as shown upon the Maps and the property described in Exhibit "A-1" attached to this Supplemental Declaration and the Improvements thereon, including but not limited to all structures and appurtenances thereto of every type and kind, landscaping, sod, sprinklers, irrigation, valves, rocks and boulders, conduit, asphalt, Private Streets and sidewalks, concrete paving stones, walkways, walls, entry monuments and signage, roundabouts, center medians/islands, ambiance lighting, curb, gutters, pedestrian and vehicle entry/exit gates and appurtenances, Private Drainage Easements, drainage pipes, street signs, park, fountain, entry gate building, bollards, wrought iron, alarm system monitoring for Residences (if Declarant wires the Residences for a basic, limited alarm system).

1.13 Common Expenses. "Common Expenses" shall mean those expenses for which the Corporation is responsible under this Supplemental Declaration, including the actual and estimated costs of maintenance, management, operation, repair and replacement of the Common Elements as defined in Section 1.12 above, and any improvements thereon, and any unpaid Special Assessments; the costs of all gardening and other services benefiting the Common Elements, if any; the costs of fire, casualty and liability insurance, workers' compensation insurance, errors and omissions and Directors, Officer's and agent liability insurance, and other insurance covering the Common Elements and the Directors, Officers and agents of the Corporation; the costs of bonding of the Directors; taxes paid by the Corporation; amounts paid by the Corporation for discharge of any Lien or encumbrance levied against the Common Elements, or portion thereof; and the costs of any other item or items incurred by the Corporation, for any reason whatsoever in connection with the Common Elements, for the common benefit of the Owners.

1.14 Common Lot. "Common Lots" shall mean Common Lots A, B, C, D, E, F, G, H, I J, K, L, M, N, O, P, Q, R, S, T, U, V, W, X, Y, Z, AA, BB, CC, DD, EE and FF as shown on the Map for Unit 1 and Common Lots A, B, C and D as shown on the Map for Unit 4 and the property described in Exhibit "A-1" attached to this Supplemental Declaration. The Common Lots are subject to various utility easements conveyed and granted under the Map and may be subject to other easements reserved by the Declarant or required by any governmental agency.

1.15 Corporation. "Corporation" shall mean the Royal Highlands Street and Landscape Maintenance Corporation, a Nevada nonprofit corporation, its successors and assigns. The Corporation may also be referred to as Neighborhood Association in this Supplemental Declaration and as defined in the Master Association Documents.

1.16 Corporation's Governing Documents. "Corporation's Governing Documents shall mean the Articles, the Bylaws, this Supplemental Declaration and the Declaration of Non-Applicability as such governing documents are defined herein and as may be amended from time to time.

1.17 Corporation Maintenance Account. "Corporation Maintenance Account" shall mean the accounts created for receipts and disbursements of the Corporation, pursuant to Article 5 hereof.

4

BONY000300

20021107
.01762

1.18   Declarant. "Declarant" shall mean, Southwest 31 LLC, a Nevada Limited Liability Company or its successors or assigns (to the extent but only to the extent provided in any written assignment of rights by Declarant and assumption of obligations by the assignee).

1.19   Deed of Trust. "Deed of Trust" shall mean a Mortgage as further defined herein.

1.20   Director, Directors. "Director, Directors" shall mean a member of the Board elected in accordance with the Bylaws of the Corporation and this Supplemental Declaration.

1.21   Family. "Family" shall mean one or more natural persons related to each other by blood, marriage or adoption, or one or more natural persons not all so related, but who maintain a common household in a Residence.

1.22   FHA. "FHA" shall mean the Federal Housing Administration of the United States Department of Housing and Urban Development and any department or agency of the United States government which succeeds to the FHA's function of insuring notes secured by Mortgages on residential real estate.

1.23   FHLMC. "FHLMC" shall mean the Federal Home Loan Mortgage Corporation (also known as The Mortgage Corporation) created by Title II of the Emergency Home Finance Act of 1970, and any successors to such corporation.

1.24   Fire Access Easement. "Fire Access Easement" shall mean that portion of Property designated as Fire Department Access Easement as set forth on the Map and as referenced on Exhibit "B" attached to this Supplemental Declaration.

1.25   Fiscal Year. "Fiscal Year" shall mean the fiscal accounting and reporting period of the Corporation selected by the Board from time to time.

1.26   FNMA. "FNMA" shall mean the Federal National Mortgage Association - a government-sponsored private corporation established pursuant to Title VIII of the Housing and Urban Development Act of 1968, and any successors to such corporation.

1.27   Future Development Phase. "Future Development Phase" shall mean that portion of the Property, described in Exhibit "A-2" attached hereto, that is subject to this Supplemental Declaration, but is not yet subject to a Recorded Map. The maximum number of Lots in the Future Development Phases shall not exceed one thousand (1000) Lots exclusive of the Lots in Phase 1.

1.28   GNMA. "GNMA" shall mean the Government National Mortgage Association administered by the United States Department of Housing and Urban Development, and any successor to such association.

1.29   Guest. "Guest" shall mean any visitor of an Owner or Resident, including any employee, tenant, guest (whether or not for hire), licensee, agent or invitee of such Owner or Resident, including any transient guest, or any Family member of the Owner or Resident.

1.30   Improvements. "Improvements" shall mean, but not be limited to, all structures and appurtenances thereto of every type and kind, located on the Common Elements and on the

5

Property including but not limited to, landscaping, sod, sprinklers, irrigation, valves, rocks and boulders, conduit, asphalt, Private Streets and sidewalks, concrete paving stones, walkways, walls, entry monuments and signage, center medians and islands with ambiance lighting, curb, gutters, pedestrian and vehicle entry/exit gates and appurtenances, Private Drainage Easements, drainage pipes, street signs, park, fountain, entry gate building, bollards, wrought iron.

1.31 Improvement Restrictions. "Improvement Restrictions" shall mean the Improvement Restrictions for Royal Highlands recorded on November 1, 2002, in Book 20021101, as Instrument No. 02481, as may be amended from time to time.

1.32 Lot. "Lot" shall mean each and every individual, physical portion of the Property designated for separate Ownership, and which is an intended or proposed site for one Residence and may include portions of the Lot designated as Sight Visibility Restriction Easement, Private Irrigation and Power Easement, Street Lights and Traffic Control Devices Easement, Private Drainage Easement, Public Utility Easements, Fire Access Easement, as shown on the Maps and as referenced on exhibits attached to this Supplemental Declaration, as well as any other easements reserved by the Declarant or required by any governmental agency. Lots are subject to the Southern Highlands Special Improvement District No. 121 recorded in the Official records of Clark County, Nevada on December 17, 1999, in Book 991217, as Instrument No. 00909.

1.33 Manager. "Manager" shall mean the Person employed by the Corporation pursuant to and limited by the provisions of this Supplemental Declaration and the Bylaws, and delegated the duties, powers or functions of the Corporation as limited by the terms of this Supplemental Declaration, the Bylaws and the terms of the agreement between the Corporation and said Person.

1.34 Map. "Map" shall mean (i) a Recorded Map of Royal Highlands at Southern Highlands – Unit 1, recorded as Instrument No. 02359, on May 3, 2002, in Book 104, page 0064 of Plats, in the Official Records of Clark County, Nevada, (ii) a Recorded Map of Royal Highlands at Southern Highlands – Unit 4, recorded as Instrument No. 02732, on June 25, 2002, in Book 105, page 0040 of Plats, in the Official Records of Clark County, Nevada and (iii) a Recorded Map or plat covering any portion of the Property or Phase of Development, all of which may be amended from time to time. Attached hereto as Exhibit "C" is a copy of the Recorded Maps and attached hereto as Exhibit "C-1", for reference purposes only, is a site plan for the Lots, Common Elements and Common Lots within the Property.

1.35 Master Association. "Master Association" shall mean the Southern Highlands Community Association, a Nevada non-profit corporation, its successors or assigns. The rights, duties, obligations, responsibilities and liabilities of the Master Association are as set forth in the Master Association Documents and the applicable laws of NRS 116.

1.36 Master Association Documents. "Master Association Documents" shall mean the Master Declaration of Covenants, Conditions and Restrictions and Reservations of Easement for Southern Highlands, First Amendment to Master Declaration of Covenants, Conditions and Restrictions for Southern Highlands, Bylaws of Southern Highlands Community Association and Articles of Incorporation for Southern Highlands Community Association.

BONY000302



1.37 **Master Declarant.** "Master Declarant" shall mean Southern Highlands Development Corporation, a Nevada limited liability company, as defined in the Master Association Documents.

1.38 **Member, Membership.** "Member" shall mean any Person holding a membership in the Corporation, as provided in this Supplemental Declaration. "Membership" shall mean the property, voting and other rights and privileges of Members as provided herein, together with the correlative duties and obligations contained in this Supplemental Declaration and the Master Association Documents.

1.39 **Mortgage.** "Mortgage" shall mean any Recorded Mortgage or Deed of Trust relating to one or more Lots or other portion of the Property to secure the performance of an obligation, which conveyance will be reconveyed upon the completion of such performance.

1.40 **Mortgagee, Mortgagor.** "Mortgagee" shall mean a Person to whom a Mortgage is made and shall include the Beneficiary of a Deed of Trust. "Mortgagor" shall mean a Person who mortgages his or its property to another (i.e., the maker of a Mortgage), and shall include the Trustor of a Deed of Trust. The term "Trustor" shall be synonymous with the term "Mortgagor" and the term "Beneficiary" shall be synonymous with the term "Mortgagee."

1.41 **Notice and Hearing.** "Notice and Hearing" shall mean written notice and a hearing before the Board, at which the Owner of an alleged violation or concern shall have an opportunity to be heard in person, or by counsel at the Owner's expense, in the manner further provided in the Bylaws, Rules and Regulations or this Supplemental Declaration.

1.42 **Officer, Officers.** "Officer, Officers" shall mean the person elected annually by the Board at the organizational meeting of each new Board, in accordance with the Bylaws of the Corporation and this Supplemental Declaration, to fill one of the offices identified in the Bylaws.

1.43 **Owner.** "Owner" shall mean the Person or Persons, including Declarant holding fee simple interest to all or any interest in a Lot, excluding those having such interest merely as security for the performance of an obligation. The term "Owner" shall include a seller under an executory contract of sale but shall exclude Mortgagees.

1.44 **Person.** "Person" shall mean a natural individual or any other entity with the legal right to hold title to real property.

1.45 **Phase 1.** "Phase 1" shall mean all of the Property described in Exhibit "A" and Exhibit "A-1" attached to this Supplemental Declaration.

1.46 **Phase of Development.** "Phase of Development" shall mean: (a) Phase 1 or (b) any portion of the real property (Annexable Territory) covered by a Notice of Addition recorded pursuant to Article 14 herein, unless otherwise defined in such Notice of Addition. Attached hereto as Exhibit "D", for reference purposes only, is a site plan for the Annexable Territory.

1.47 **Private Drainage Easements.** "Private Drainage Easement" shall mean that portion of the Property designated as Private Drainage Easements as set forth on the Map and as referenced on Exhibit "B" attached to this Supplemental Declaration.

BONY000303

1.48 **Private Irrigation and Power Easement.** "Private Irrigation and Power Easement" shall mean that portion of all Lots within the Property abutting a Private Street described as a five-foot wide easement adjacent to all back of sidewalk or ten feet back of curb, if no sidewalk exists.

1.49 **Private Streets.** "Private Streets" shall mean all interior streets of the Property as shown upon the Map and as referenced on exhibits attached to this Supplemental Declaration. The Private Streets improvements may include but are not limited to concrete paving stone sidewalks, curb, gutters, center medians and islands with ambiance lighting, fountain, the entry gate building and entry/exit gates and appurtenances thereto. Public Utility Easements and Sewer Easements have been granted upon, under, over and across the Private Streets as shown upon the Map. The Private Streets are subject to the Private Irrigation and Power Easement and may be subject to additional easements reserved or granted by the Declarant or required by any governmental agency.

1.50 **Property.** "Property" shall mean all of the real Property more particularly described in Exhibit "A", Exhibit "A-1" and Exhibit "A-2" attached to this Supplemental Declaration together with Phases of Development which are made subject to this Supplemental Declaration in accordance with Article 14 herein, from time to time.

1.51 **Public Utility Easement.** "Public Utility Easement" shall mean that portion of the Property designated as Public Utility Easement or Public Easements as set forth on the Map and may consist of easements granted to among others, Southwest Gas Corporation, Nevada Power Company, Sprint, Cox Communications Las Vegas, Inc., Las Vegas Valley Water District, and to their successors and assigns.

1.52 **Record, File, Recordation.** "Record," "File," or "Recordation" shall mean, with respect to any document, the recordation or filing of such document in the Office of the Clark County Recorder.

1.53 **Residence.** "Residence" shall mean the structure or physical portion of the Lot used for living quarters and held as a separate freehold estate, as separately shown, numbered and designated on the Map, and intended for use by a single Family. There may only be one Residence per Lot. In interpreting deeds, and this Supplemental Declaration, and accompanying Maps, the existing physical boundaries of the Residence constructed or reconstructed in substantial accordance with the applicable Map and the original plans thereof, if such plans are available, shall be conclusively presumed to be its boundaries, rather than the description expressed in the deed, Map or Supplemental Declaration, regardless of settling or lateral movement of the building and regardless of minor variances between boundaries, as shown on the Map or defined in the deed and Supplemental Declaration, and the boundaries of a building as constructed or reconstructed.

1.54 **Resident.** "Resident" shall mean any Person who is physically residing in a Residence on a Lot, for so long as said Person is so residing, including, but not limited to, an Owner or a tenant.

1.55 **Rules and Regulations.** "Rules and Regulations" shall mean the Rules and Regulations that may be adopted by the Board pursuant to this Supplemental Declaration or the Bylaws, as such Rules and Regulations may be amended from time to time.

8

BONY000304

1.56 Sight Visibility Restriction Easement. "Sight Visibility Restriction Easement" shall mean all portions of the Property designated as Sight Visibility Restriction Easements as set forth on the Map.

1.57 Street Light and Traffic Control Devices Easement. "Street Light and Traffic Control Devices Easement" shall mean a five foot wide Utility Easement on all property lines abutting Private Streets for Street Light and Traffic Control Devices and drainage purposes as granted under the Recorded Map.

1.58 Supplemental Declaration. "Supplemental Declaration" shall mean this Supplemental Declaration of Covenants, Conditions and Restrictions and Grant and Reservation of Easements for Royal Highlands Street And Landscape Maintenance Corporation, as it may be amended from time to time.

1.59 VA. "VA" shall mean the Department of Veterans Affairs of the United States of America and any department or agency of the United States government which succeeds to VA's function of issuing guarantees of notes secured by Mortgages on residential real estate.

1.60 Walls. "Walls" shall have the following definitions and shall have the maintenance requirements as specified in Article 3 of this Supplemental Declaration:

    a. Boundary Wall. "Boundary Wall" shall mean any portion of wall that is constructed and placed approximately on the common boundary of a Lot and adjacent property.

    b. Common Lot Wall. "Common Lot Wall" shall mean any portion of wall that is constructed and placed approximately on the common boundary of a Common Lot and a Lot or adjacent Property.

    c. Easement Wall. "Easement Wall" shall mean any portion of wall that is constructed and placed on a Lot or common boundary of a Lot and separates the Lot from the adjacent Private Drainage Easement.

    d. Party Wall. "Party Wall" shall mean any portion of wall that is constructed and placed approximately on the common boundary of two (2) or more Lots.

    e. Perimeter Wall. "Perimeter Wall" shall mean any portion of wall that is constructed by Declarant or Master Declarant and intended to be the exterior boundary walls of the Property abutting Southern Highlands Parkway and Valley View Boulevard.

    f. Wrought Iron Walls. "Wrought Iron Walls" shall mean any portion wall or wrought iron that is constructed and placed on the common boundary of a Lot and the Paseo (Area of Common Responsibility).

9

BONY000305

20021107
.01752

## ARTICLE 2
### The Corporation

2.1  Organization of Corporation. The Corporation is incorporated under the name of Royal Highlands Street and Landscape Maintenance Corporation, as a nonprofit corporation organized under the provisions of Sections 82.006 through 82.690 of the Nevada Revised Statutes.

2.2  Duties and Powers. The duties and powers of the Corporation are limited to the following:

(a)  The Corporation, acting through the Board, shall have the right and responsibility to enter into contracts for the design, installation or construction of capital improvements on the Common Elements; and

(b)  The Corporation, acting through the Board, shall have the right and responsibility to insure the enforcement of the speed limit as outlined in Article 3, Section 3.7. Any modification to the speed limit shall require the written approval of sixty-seven percent (67%) of the Membership; and

(c)  The Corporation, acting through the Board, shall have the right and responsibility to inspect, maintain, repair, replace the hardscape areas due to naturally occurring alkaline residue; and

(d)  The Corporation, acting through the Board, shall have the right and responsibility to replace destroyed or damaged trees or other vegetation and plant trees, shrubs and ground cover upon any portion of the Common Elements. The plant material installed by the Corporation within the Common Elements has been sized for a maximum three (3) to five (5) year growth pattern. At such time as the plant material becomes too large or otherwise incompatible with the Common Elements, the Corporation is responsible for cutting back, pruning, removing and/or replacing said plant material; and

(e)  The Corporation, acting through the Board, shall have the right and responsibility to inspect, maintain, repair, and replace the Private Streets. (For proper maintenance of the Private Streets, it is a requirement that they be sealed at least once every five years. It is also required that the concrete paving stones located within the Private Streets, roundabouts and sidewalk adjoining the Common Lots be pressure washed and re-sealed on an annual basis.)

(f)  The Corporation, acting through the Board, shall have the right and responsibility to contract with a single company and pay for the basic monthly service, operation and monitoring of an alarm system for the Owners (if Declarant wires the Residences for a basic, limited alarm system.) unless otherwise directed in writing by sixty seven percent (67%) of the Membership; and

(g)  The Corporation, acting through the Board, may at any time, and from time to time

BONY000306


20021107
.01762

## ARTICLE 5
## Corporation Maintenance Account and Assessments

5.1 **Personal Obligation of Assessments.** Declarant, on behalf of itself and all future Owners, hereby covenants and agrees to pay, and each Owner by accepting title to a Lot or any interest therein, whether or not it shall be expressed in the deed or other instrument conveying title, shall be deemed to covenant and agree to pay to the Corporation, Annual Assessments and other amounts as required or provided for in this Supplemental Declaration. Amounts payable for Annual Assessments and Special Assessments (as generally defined in Sections 5.7 and 5.10, respectively) are generally referred to herein as "Assessments." Other amounts payable by an Owner to the Corporation, (or payable with respect to an Owner's Lot), including charges, fines, interest, attorneys fees and other costs or expenses incurred by the Corporation in collecting unpaid amounts shall be added to the Annual or Special Assessments charged to his Lot and shall be enforceable and collectible as Annual or Special Assessments.

Subject to the provisions hereof, the Board shall have the power and authority to determine all matters in connection with Annual or Special Assessments, including, without limitation, power and authority to determine where, when and how Assessments shall be paid to the Corporation, and each Owner shall comply with all such determinations.

5.2 **Maintenance Accounts of Corporation.** The Board shall establish no fewer than two (2) separate Corporation Maintenance Accounts, into which shall be deposited all funds paid to the Corporation, and from which disbursements shall be made, as provided herein, in the performance of functions by the Corporation under this Supplemental Declaration. The Corporation Maintenance Accounts may be established as trust accounts at a banking or savings institution and shall include: (1) an Operating Account for current Common Expenses of the Corporation, (2) an adequate Reserve Account for capital improvements, replacements, and repairs of the Common Elements (which cannot normally be expected to occur on an annual or more frequent basis), and for payment of deductible amounts for policies of insurance which the Corporation obtains as provided in Section 9.1 hereof, and (3) any other funds which the Board may establish to the extent necessary under the provisions of this Supplemental Declaration. Nothing contained herein shall limit, preclude or impair the establishment of additional Corporation Maintenance Accounts, so long as the amounts assessed to, deposited into, and disbursed from any Corporation Maintenance Accounts are earmarked for specified purposes authorized by this Supplemental Declaration.

5.3 **Purpose of Assessments.** The Assessments levied by the Corporation shall be used exclusively for the operation, replacement, improvement and maintenance of the Common Elements, and to discharge any other obligations of the Corporation under this Supplemental Declaration. All amounts deposited into the Corporation Maintenance Accounts must be used solely for the common benefit of all of the Owners for purposes authorized by this Supplemental Declaration. Disbursements from the Operating Account shall be made by the Board for such purposes as are necessary for the discharge of its responsibilities herein for the common benefit of all of the Owners, other than those purposes for which disbursements from the Reserve Account are to be used. Disbursements from the Reserve Account shall be made by the Board and only for the purposes specified in this Article 5. Nothing in this Supplemental Declaration shall be construed in such a way as to permit the use of Assessments or Corporation funds to abate any annoyance or nuisance emanating from outside the boundaries of the Property or anything within the Property for which the Board does not have the authority or power to govern

BONY000316



20021107
.01762

or enforce. Annual Assessments shall be used to satisfy Common Expenses of the Corporation, as provided herein and in the Bylaws.

5.4   **Fiscal Year and Determination of Budget.** The Fiscal Year of the Corporation shall be the calendar year. Prior to the commencement of each Fiscal Year, the Board shall determine the Budget for the Corporation for such Fiscal Year in the following manner:

The Corporation shall not less than 30 days or more than 60 days before the beginning of the Fiscal Year of the Corporation prepare and distribute to each Owner a Budget for the Fiscal Year showing, in reasonable detail, the financial plan for the daily operation of the Corporation, the estimated annual revenue and expenditures of the Corporation and any contribution to be made to the reserve account of the Corporation.

The Budget to maintain the reserve must include, without limitation: (1) the current estimated replacement cost, estimated remaining life and estimated useful life of each major component of the Common Elements; (2) As of the end of the Fiscal Year for which the Budget is prepared, the current estimate of the amount of cash reserves that are necessary, and the current amount of accumulated cash reserves that are set aside, to repair, replace or restore the major components of the Common Elements; (3) A statement as to whether the Board has determined or anticipates that the levy of one or more Special Assessments will be required to repair, replace or restore any major component of the Common Elements or to provide adequate reserves for that purpose; and (4) a general statement describing the procedures used for the estimation and accumulation of cash reserves pursuant to subparagraph (2) above, including, without limitation, the qualifications of the person responsible for the preparation of the Reserve Study.

5.5   **Budget Ratification.** Within thirty (30) days after adoption of any proposed Budget for the Corporation, the Board shall provide a summary of the Budget to all Owners, and shall set a date for a meeting of the Owners to consider ratification of the Budget not less than fourteen (14) days nor more than thirty (30) days after mailing of the summary. Unless at that meeting a majority of all Owners reject the Budget, the Budget is ratified, whether or not a quorum is present. If the proposed Budget is rejected, the periodic Budget last ratified by Owners must be continued until such time as the Owners ratify a subsequent Budget proposed by the Board. In lieu of distributing copies of the Budget, the Board may distribute to each Owner a summary of the Budget accompanied by a written notice that the Budget is available for review at a suitable location or the Corporation's business office and that copies of the Budget will be provided upon request.

5.6   **Base Assessments.** Commencement of Base Assessments for Lots shall be in accordance with the Master Association Documents. Owners should refer to the Master Association Documents regarding Base Assessments.

5.7   **Annual Assessments.** Annual Assessments shall commence on January 1, 2004, or at a subsequent date as determined by the Board. Annual Assessments for the Future Development Phase as described herein and as referenced on Exhibit "A-2" shall commence on: (a) January 1, 2004 (or at a subsequent date as determined by the Board; or (b) upon the recordation of a final Map for any portion of a Future Development Phase whichever occurs later. Voting rights attributable to the Future Development Phase shall not vest until assessments have commenced as to such Lots. The amount to be raised by Annual

BONY000317

Case 2:16-cv-01993-JCM-BNW   Document 83-11   Filed 12/20/18   Page 20 of 20

20021107
.01762

as provided in this Article 10, such repair and restoration shall be completed as promptly as practical and in a lawful and workmanlike manner, in accordance with plans approved by the Board as provided herein.

10.4  Notice to Owners and Listed Mortgagees. The Board, immediately upon having knowledge of any damage or destruction affecting a material portion of the Common Elements, shall promptly notify all Owners and Beneficiaries, insurers and guarantors of first Mortgages on Lots in the Property, who have filed a written request for such notice with the Board. The Board, immediately upon having knowledge of any damage or destruction affecting a Lot, shall promptly notify any Beneficiary, insurer or guarantor of any Mortgage encumbering such Lot who has filed a written request for such notice with the Board.

## ARTICLE 11
## Eminent Domain

The term "taking" as used in this Article shall mean condemnation by exercise of the power of eminent domain or by sale under threat of the exercise of the power of eminent domain. The Board shall represent the Members, with the exception of the Secretary, Department of Veterans Affairs, or an officer of the United States of America, in any proceedings, negotiations, settlements, or agreements regarding taking. All taking proceeds for Common Elements which have been conveyed or granted to the Corporation shall be payable to the Corporation for the benefit of the Members and their Mortgagees. All taking proceeds for Lots and/or Common Elements which are owned by Declarant shall be paid to Declarant. Said proceeds shall be distributed to Members, Declarant and Mortgagees as provided in this Article 12.

11.1  Condemnation of Common Elements. If there is a taking of all or any portion of the Common Elements, or any interest therein, other than the taking of an undivided interest therein taken as a result of the taking of a Lot, then the award in condemnation shall be paid to the Corporation and shall be deposited in the Operating Account. No Member shall be entitled to participate as a party, or otherwise, in any proceedings relating to such condemnation.

11.2  Notice to Owners and Mortgagees. The Board, upon learning of any taking affecting a material portion of the Common Elements, or any threat thereof, shall promptly notify all Owners and those Beneficiaries, insurers and guarantors of Mortgages on request for such notice with the Corporation. The Board, upon learning of any taking affecting a Lot, or any threat thereof, shall promptly notify any Beneficiary, insurer or guarantor of a Mortgage encumbering such Lot who has filed a written request for such notice with the Corporation.

## ARTICLE 12
## Rights of Mortgagees

Notwithstanding any other provision of this Supplemental Declaration, no amendment or violation of this Supplemental Declaration shall operate to defeat or render invalid the rights of the Beneficiary under any Deed of Trust upon one (1) or more Lots made in good faith and for value, provided that after the foreclosure of any such Deed of Trust such Lot(s) shall remain subject to this Supplemental Declaration, as amended. For purpose of this Supplemental Declaration, "first Mortgage" shall mean a Mortgage with first priority over other Mortgages or Deeds of Trust on a Lot, and "first Mortgagee" shall mean the Beneficiary of a first Mortgage.

31