UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF NEW YORK MELLON,<br><br>Plaintiff(s),<br><br>v.<br><br>ROYAL HIGHLANDS STREET AND LANDSCAPE MAINTENANCE CORPORATION, et al.,<br><br>Defendant(s). | Case No. 2:16-CV-1993 JCM (BNW)<br><br>ORDER |

Presently before the court is defendant SFR Investments Pool 1, LLC's ("SFR") motion for summary judgment. (ECF Nos. 82, 84). Plaintiff Bank of New York Mellon ("BNYM") filed a response (ECF No. 82), to which SFR replied (ECF No. 90).

Also before the court is BNYM's motion for summary judgment. (ECF No. 83). SFR filed a response (ECF No. 87), to which BNYM replied (ECF No. 89).

Also before the court is defendant Royal Highlands Street and Landscape maintenance Corporation's ("Royal Highlands") motion to dismiss. (ECF No. 85). BNYM filed a response (ECF No. 85), to which Royal Highlands replied (ECF No. 91).

**I.     Facts**

This action arises from a dispute over real property located at 11080 Kilkerran Court, Las Vegas, Nevada 89141 ("the property"). (ECF No. 1).

Lois Dorsey purchased the property on or about July 12, 2006. (ECF No. 83-1). Dorsey financed the purchase with a loan in the amount of $850,000.00 from Countrywide Bank, N.A. ("Countrywide"). *Id*. Countrywide secured the loan with a deed of trust, which names Countrywide as the lender, PRLAP, Inc. as the trustee, and Mortgage Electronic Registration

**James C. Mahan**
**U.S. District Judge**

Systems, Inc. ("MERS") as the beneficiary as nominee for the lender and lender's successors and assigns. *Id*. BNYM currently holds all beneficial interest in the deed of trust. (ECF No. 83-2).

On June 3, 2009, Royal Highlands, through its agent defendant Alessi & Koenig, LLC ("A&K"), recorded a notice of delinquent assessment lien ("the lien") against the property for Dorsey's failure to pay Royal Highlands in the amount of $1,496.41. (ECF No. 83-3). On September 15, 2009, Royal Highlands recorded a notice of default and election to sell pursuant to the lien, stating that the amount due was $2,619.84 as of July 27, 2009. (ECF No. 83-4).

On July 14, 2010, Royal Highlands recorded a notice of trustee's sale against the property. (ECF No. 83-5). On February 13, 2013, Royal Highlands sold the property in a non-judicial foreclosure sale to SFR in exchange for $40,000.00. (ECF No. 83-9). On February 19, 2013, Royal Highlands recorded the trustee's deed upon sale with the Clark County recorder's office. *Id*.

On August 22, 2016, BNYM initiated this action. (ECF No. 1). In its amended complaint, BNYM asserts a single cause of action for quiet title/declaratory judgment against all defendants. (ECF No. 76). On November 4, 2016, SFR filed and answer and cross/counterclaim, asserts two causes of action: (1) quiet title/declaratory relief and (2) injunctive relief. (ECF No. 22).

Now, Royal Highlands moves to dismiss the amended complaint. (ECF No. 85). BNYM and SFR have also filed cross-motions for summary judgment. (ECF Nos. 82, 83, 84).

**II.     Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be

entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

As a preliminary matter, the court addresses SFR's argument that the statute of limitations bars BNYM's quiet title claim. NRS 11.070 sets forth a five-year limitations period for quiet title claims. Nev. Rev. Stat. § 11.070. Royal Highlands sold the property in a nonjudicial foreclosure sale on February 13, 2013. (ECF No. 83-9). BNYM brought this lawsuit less than five years later, on August 22, 2016. (ECF No. 1). Thus, the statute of limitations does not bar BNYM's quiet title claim. Accordingly, the court adjudicates the merits of this case.

BNYM and SFR have filed cross-motions for summary judgment, disputing whether the foreclosure sale extinguished the deed of trust. (ECF Nos. 82, 83, 84).

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, a party must show that its claim to the property is superior to all others in order to succeed on a quiet title action. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the Nevada Revised Statutes[1] allows an HOA to place a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to the subparagraph (2)(b) exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

NRS 116.3116 *et seq.* ("Chapter 116") permits an HOA to enforce its superpriority lien with a nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

NRS 116.31166(1) provides that when an HOA forecloses on a property pursuant to NRS 116.31164, the following recitals in the deed are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern . . . all statutory prerequisites to a valid HOA lien foreclosure sale." *See Shadow Wood Homeowners Assoc. v. N.Y.*

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

[2] The statute further provides as follows:

James C. Mahan
U.S. District Judge

*Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016). Nevertheless, courts retain the equitable authority to consider quiet title actions even when an HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of trustee's sale, and the recorded trustee's deed upon sale. *See* (ECF Nos. 83-3, 83-4, 83-5, 83-9). Further, the recorded trustee's deed upon sale contains the necessary recitals to establish compliance with NRS 116.31162 through NRS 116.31164. (ECF No. 83-9); *see Shadow Wood*, 466 P.3d at 1112. Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale was valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

While NRS 116.3116 accords certain deed recitals conclusive effect, it does not conclusively entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

---

2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

BNYM argues that the court should declare that the deed of trust encumbers the property despite Royal Highlands compliance with Chapter 116 because (1) Royal Highlands is a limited purpose association, (2) the foreclosure sale was commercially unreasonable, and (3) Royal Highlands foreclosed on the property pursuant to an unconstitutional statute. (ECF No. 83). The court disagrees.

### a. Limited purpose association

BNYM argues that Royal Highlands is not entitled to the protections of Chapter 116 because it is a limited purpose association. (ECF No. 83). Indeed, limited purpose associations pursuant to NRS 116.1201 are exempt from Chapter 116. Nev. Rev. State § 116.1201(2) ("This chapter does not apply to: . . . (a) A limited-purpose association . . ."). NAC 116.090 contains interpretive guidance for the type of "limited-purpose association" implicated here. It states:

**NAC 116.090 "Limited-purpose association" interpreted.**
1. An association is a limited-purpose association pursuant to subparagraph (1) of paragraph (a) of subsection 6 of NRS 116.1201 if:
   (a) The association has been created for the sole purpose of maintaining the common elements consisting of landscaping, public lighting or security walls, or trails, parks and open space;
   (b) The declaration states that the association has been created as a landscape maintenance association; and
   (c) The declaration expressly prohibits:
      (1) The association, and not a unit's owner, from enforcing a use restriction against a unit's owner;
      (2) The association from adopting any rules or regulations concerning the enforcement of a use restriction against a unit's owner; and
      (3) The imposition of a fine or any other penalty against a unit's owner for a violation of a use restriction.

NAC 116.090.

BNYM has cited various provisions of the CC&Rs identifying that Royal Highlands had the limited purpose of maintaining common elements of the community. (ECF Nos. 83, 83-11). However, BNYM has not identified any provision of the CC&Rs that expressly prohibit Royal Highlands from enforcing a use restriction, adopting rules regarding use restrictions, and imposing fines or other penalties on homeowners that violate the use restriction rules. Therefore, BNYM has not shown that Royal Highlands is a limited purpose association.

### b. Commercial reasonability

**James C. Mahan**
**U.S. District Judge**

- 7 -

SFR argues that the foreclosure sale was commercially reasonable because the sale price ($40,000.00) was not grossly inadequate given the conditions under which the property was sold and because BNYM has not presented any evidence of fraud, unfairness, or oppression. (ECF No. 88).

BNYM argues that the court should grant its motion because the foreclosure sale for approximately 8% of the property's fair market value ($450,000.00) is grossly inadequate and because BNYM can establish evidence of fraud, unfairness, or oppression. (ECF No. 83).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[3]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure

---

[3] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963))) ("*Long*").

BNYM overlooks the reality of the foreclosure process. The amount of the lien—not the fair market value of the property—is what typically sets the sales price. Further, BNYM fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify setting aside the foreclosure sale. BNYM relies on its repeated allegations that Royal Highlands failed to provide adequate notice of the foreclosure and made various misrepresentations regarding the lien collection process. However, as discussed in the previous section, the amount due was set forth in the notice of default and election to sell and, subsequently, in the notice of foreclosure sale. (ECF Nos. 83-4, 83-9). Rather than tendering the noticed amount under protest so as to preserve its interest and then later seeking a refund of the difference in dispute, BNYM chose to allow the foreclosure sale to proceed.

BNYM also claims that the foreclosure sale was unfair because the CC&Rs provide that a sale pursuant to the covenants on the property cannot extinguish a deed of trust so long as the violations of the covenant were made in good faith and for fair value. (ECF No. 83).

However, NRS 116.1104 provides that "[e]xcept as expressly provided in this chapter, its provisions may not be varied by agreement, and rights conferred by it may not be waived." Nev. Rev. Stat. § 116.1104; *see also Bayview Loan Servicing, LLC v. SFR Investments Pool 1, LLC*, No. 2:14-CV-1875-JCM-GWF, 2017 WL 1100955, at *9 (D. Nev. Mar. 22, 2017) (discussing the reasoning in ZYZZX2); *JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC*, 200 F. Supp. 3d 1141, 1168 (D. Nev. 2016) (holding that an HOA's failure to comply with its CC&Rs does not set aside a foreclosure sale, due to NRS 116.1104). Accordingly, language in the CC&Rs has no impact on the superprioriety lien rights granted by Chapter 116.

Accordingly, BNYM's commercial reasonability argument fails as a matter of law, as BNYM failed to set forth sufficient evidence of fraud, unfairness, or oppression. *See, e.g., Nationstar Mortg., LLC*, No. 70653, 2017 WL 1423938, at *3 n.2 ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party

challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

   *c. Constitutionality of Chapter 116*

BNYM argues that the court must declare that the deed of trust encumbers the property pursuant to *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154, 1159 (9th Cir. 2016) ("*Bourne Valley*").

In *Bourne Valley*, the Ninth Circuit held that Chapter 116 violated the Due Process Clause of the Fourteenth Amendment because it did not require a party foreclosing on a property to provide notice to a holder of any subordinate security interest. *See Bourne Valley*, 832 F.3d at 1159. This conclusion was based on the interpretation that NRS 116.31168(1) did not incorporate the mandatory notice requirement in NRS 107.090. *Id*.

When the Ninth Circuit ruled in *Bourne Valley*, there was no authority on the interpretation of NRS 116.31168(1). Left with the general doctrines of statute interpretation, the court declined to incorporate NRS 107.090 on the grounds that it would render NRS 116.31168(1) superfluous. *Id*. (citing *S. Nev. Homebuilders Ass'n v. Clark Cnty.*, 117 P.3d 171, 173 (2005)).

Since the Ninth Circuit's decision in *Bourne Valley*, the Nevada Supreme Court has provided its interpretation of Chapter 116, holding that NRS 116.31168(1) incorporates NRS 107.090. *SFR Invs. Pool 1, LLC. v. The Bank of N.Y. Mellon*, 422 P.3d 1248, 1252 (Nev. 2018) (expressly refuting *Bourne Valley*). Under this ruling, NRS 116.31168(1) requires notice to subordinate interest holders and, thus, does not violate the Fourteenth Amendment. *Id*.

Both the Ninth Circuit and the Supreme Court have recognized, "a [s]tate's highest court is the final judicial arbiter of the meaning of state statutes." *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (citing *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975)); Therefore, because the Nevada Supreme Court's interpretation controls, Chapter 116 is facially constitutional under the Due Process Clause of the Fourteenth Amendment.

Indeed, the Ninth Circuit has confirmed this court's analysis of Chapter 116. *See Bank of America, N.A. v. Arlington West Twilight Homeowners Association*, No. 17-15796, 2019 WL 1461317 at \*3 (9th Cir. April 3, 2019) (holding that (1) *Bourne Valley* no longer applies in light

- 10 -

of the Nevada Supreme Court's opinion in *SFR Invs. Pool 1, LLC v. Bank of N.Y. Mellon* and (2) Chapter 116 is not facially unconstitutional under the Due Process Clause of the Fourteenth Amendment).

**IV. Conclusion**

In light of the foregoing, the foreclosure sale extinguished BNYM's deed of trust. As there are no pertinent issues left in this litigation, the court will dismiss as moot all remaining causes of action.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that SFR's motion for summary judgment (ECF No. 82) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that BNYM's motion for summary judgment (ECF No. 83) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Royal Highlands' motion to dismiss (ECF No. 85) be, and the same hereby is, DENIED as moot.

The clerk shall enter judgment accordingly and close the case.

DATED July 30, 2019.

_____
UNITED STATES DISTRICT JUDGE